

STATE OF MINNESOTA          DISTRICT COURT
COUNTY OF HENNEPIN      FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| JEFF BROWN, ET AL, | Personal Injury |
| Plaintiff, | **SUMMONS** |
| v. | |
| 3M COMPANY and AEARO TECHNOLOGIES LLC, | |
| Defendants. | |

THIS SUMMONS IS DIRECTED TO:     3M Company

1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

2. **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS.**
You must give or mail to the person who signed this Summons a written response called an Answer within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

   Schwebel Goetz & Sieben
   5120 IDS Center
   80th S. 8th Street
   Minneapolis, Minnesota 55402

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond.  A default judgment can then be entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer.  If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance.  **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice.  You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

## ACKNOWLEDGMENT

The undersigned acknowledge sanctions may be imposed under Minn. Stat. § 549.211.

Dated:  December 7, 2020

**SCHWEBEL GOETZ & SIEBEN, P.A.**

By   */s/ Alicia N. Sieben*

William R. Sieben (#100808)
Alicia N. Sieben (#389640)
Matthew J. Barber (#397240)
5120 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-2246
Telephone:  612-377-7777
Fax: 612-333-6311
bsieben@schwebel.com
asieben@schwebel.com
mbarber@schwebel.com

Respectfully Submitted,

**PAUL LLP**

Richard M. Paul III (*pro hac forthcoming*)
Ashlea G. Schwarz (*pro hac forthcoming*)
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Rick@PaulLLP.com
Ashlea@PaulLLP.com

**GUSTAFSON GLUEK PLLC**

Daniel E. Gustafson (#202241)
Amanda M. Williams (#341691)
120 South 6th Street, Suite 2600
Minneapolis, Minnesota 54402
Phone: 612-333-8844
dgustafson@gustafsongluek.com
awilliams@gustafsongluek.com

**ATTORNEYS FOR PLAINTIFFS**[GB1]

| STATE OF MINNESOTA | DISTRICT COURT |
|---|---|
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

|  |  |
|---|---|
|  | Personal Injury |
| JEFF BROWN, ALEX BURNS, TERENCE BURNS, DERRICK CLARKE, ANTHONY CLAYTON, TERRENCE COLLINS, PERRY CROWLEY, RICHARD DAVIS, MARK ELLER, WILLIAM FIELDS, CARL GREEN, CHRISTOPHER GRIFFITH, JASON HAUSER, JAMES HAYES, JEFFREY HOBSON, DANIEL HOEHLER, MICHAEL HUTCHISON, WILLIAM INGRAM, WILLIAM MARTIN, SCOTT MCWHORTER, MICHAEL NARON, ROBIN PACE, WILLIAM POLLARD, KERRY PUTTHOFF, REBECCA REYNA, MARQUETTE RICHARDSON, MORRIS ROWE, DERRICK SHEARD, CRAIG SNYDER, CASSANDRA WILLIAMS, ANDREW WOOD, and EDWARD YOUNG, | **COMPLAINT** |
| Plaintiffs, |  |
| v. |  |
| 3M COMPANY and AEARO TECHNOLOGIES LLC, |  |
| Defendants. |  |

Plaintiffs bring this action against defendants 3M Company and Aearo Technologies LLC, and in support thereof alleges:

1

## NATURE OF THE CASE

1.     This is a failure to warn product liability action related to an earplug manufactured and sold by Defendants. Plaintiffs used Defendants' dual-ended Combat Arms™ Earplugs - Version 2 and, as a result of Defendants' failure to warn, now suffer from hearing loss and tinnitus. Defendants knew the earplugs needed to be inserted in a particular manner in order to have any effectiveness. But the Defendants failed to warn potential purchasers of the danger of failing to do so.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over Plaintiffs' claims under Minn. Stat. § 484.01, subd. 1.

3.     This action is not removable to federal court because Plaintiffs assert no claim arising under the Constitution, law, or treaties of the United States to satisfy 28 U.S.C. § 1331 and because even though the requirements of 28 U.S.C. § 1332(a) may be met, Plaintiffs bring this suit in Defendants' home state and therefore 28 U.S.C. § 1441(b)(2) precludes removal.

4.     Venue is proper in Hennepin County, Minnesota under Minn. Stat. §§ 542.01 and 542.09 because 3M resides in Hennepin County in that it has its resident agent, an office, and a place of business in Hennepin County.

## PARTIES

5.     Plaintiff Jeff Brown is an individual residing in the state of Florida.

2

6.    Plaintiff Alex Burns is an individual residing in the state of California.

7.    Plaintiff Terence Burns is an individual residing in the state of Alabama.

8.    Plaintiff Derrick Clarke is an individual residing in the state of Florida.

9.    Plaintiff Anthony Clayton is an individual residing in the state of Kentucky.

10.   Plaintiff Terrence Collins is an individual residing in the state of Louisiana.

11.   Plaintiff Perry Crowley is an individual residing in the state of Georgia.

12.   Plaintiff Richard Davis is an individual residing in the state of Washington.

13.   Plaintiff Mark Eller is an individual residing in the state of Texas.

14.   Plaintiff William Fields is an individual residing in the state of Alabama.

15.   Plaintiff Carl Green is an individual residing in the state of California.

16.   Plaintiff Christopher Griffith is an individual residing in the state of Texas.

17.   Plaintiff Jason Hauser is an individual residing in the state of New York.

18.   Plaintiff James Hayes is an individual residing in the state of Kentucky.

19.   Plaintiff Jeffrey Hobson is an individual residing in the state of Maryland.

20.   Plaintiff Daniel Hoehler is an individual residing in the state of Kentucky.

21.   Plaintiff Michael Hutchison is an individual residing in the state of Oklahoma.

22.   Plaintiff William Ingram is an individual residing in the state of Florida.

23.   Plaintiff William Martin is an individual residing in the state of Kentucky.

24.   Plaintiff Scott McWhorter is an individual residing in the state of Maryland.

25.   Plaintiff Michael Naron is an individual residing in the state of Louisiana.

26.   Plaintiff Robin Pace is an individual residing in the state of North Carolina.

27.   Plaintiff William Pollard is an individual residing in the state of Arkansas.

28.   Plaintiff Kerry Putthoff is an individual residing in the state of Kansas.

29.   Plaintiff Rebecca Reyna is an individual residing in the state of Texas.

30.   Plaintiff Marquette Richardson is an individual residing in the state of Alabama.

31.   Plaintiff Morris Rowe is an individual residing in the state of Louisiana.

32.   Plaintiff Derrick Sheard is an individual residing in the state of Texas.

33.   Plaintiff Craig Snyder is an individual residing in the state of California.

34.   Plaintiff Cassandra Williams is an individual residing in the state of New Jersey.

35.   Plaintiff Andrew Wood is an individual residing in the state of Illinois.

36.   Plaintiff Edward Young is an individual residing in the state of Oregon.

37.   Defendant 3M is a Delaware corporation with its principal place of business in Minnesota.

38.   Defendant Aearo Technologies LLC is a limited liability company formed in Delaware with its principal place of business in Minnesota.

### FACTUAL ALLEGATIONS

**A. Plaintiffs' Use of 3M Combat Arms™ Earplugs Version 2**

*Jeff Brown*

39.   Plaintiff Brown worked as a laborer for Prosonic Corporation from approximately 2000 to 2007 and for Singley Environmental Services from approximately

4

2007 to 2010. His responsibilities included working with industrial drilling equipment for extended periods of time.

40. Plaintiff Brown wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Brown was exposed to damaging, loud impulse, high-pitched sounds.

41. Plaintiff Brown did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

42. Plaintiff Brown suffers from hearing loss and tinnitus.

**Alex Burns**

43. Plaintiff Burns worked as a safety director for Aero Union from approximately 2000 to 2010 and for Crain Walnut Shelling, Inc. from approximately 2010 to 2012. His responsibilities included working with industrial presses, machine tools, metal conveyors, shakers, and other heavy machinery and equipment for extended periods of time.

44. Plaintiff Burns wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Burns was exposed to damaging, loud impulse, high-pitched sounds.

5

45.    Plaintiff Burns did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

46.    Plaintiff Burns suffers from hearing loss and tinnitus.

*Terence Burns*

47.    Plaintiff Burns worked as a machine operator for Nemak from at least 2006 to 2009. His responsibilities included working with heavy equipment and machinery for extended periods of time.

48.    Plaintiff Burns wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Burns was exposed to damaging, loud impulse, high-pitched sounds.

49.    Plaintiff Burns did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

50.    Plaintiff Burns suffers from hearing loss.

*Derrick Clarke*

51.    Plaintiff Clarke has worked as an automotive technician for various companies from approximately 2003 to the present. His responsibilities included working in a mechanic shop with heavy equipment and tools for extended periods of time.

52. Plaintiff Clarke wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Clarke was exposed to damaging, loud impulse, high-pitched sounds.

53. Plaintiff Clarke did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

54. Plaintiff Clarke suffers from tinnitus.

*Anthony Clayton*

55. Plaintiff Clayton worked as an equipment operator for Enterprise Mining Company from approximately 2007 to 2008; for Perry County Coal Corporation from approximately 2008 to 2009; for P&P Construction from approximately 2009 to 2011; and for Perry Oil Co, Inc. from approximately 2013 to 2015. His responsibilities included operating heavy machinery and equipment in an industrial environment for extended periods of time.

56. Plaintiff Clayton wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Clayton was exposed to damaging, loud impulse, high-pitched sounds.

57. Plaintiff Clayton did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

7

58.  Plaintiff Clayton suffers from hearing loss and tinnitus.

**Terrence Collins**

59.  Plaintiff Collins worked as a marine electrician for Avondale Shipyard from approximately 2003 to 2013. His responsibilities included working with drills, industrial motors, and other heavy equipment and machinery for extended periods of time.

60.  Plaintiff Collins wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Collins was exposed to damaging, loud impulse, high-pitched sounds.

61.  Plaintiff Collins did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

62.  Plaintiff Collins suffers from hearing loss and tinnitus.

**Perry Crowley**

63.  Plaintiff Crowley worked as a lead operator for Shaw Industries from approximately 2001 to 2014. His responsibilities included operating an industrial extruder for extended periods of time.

64.  Plaintiff Crowley wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Crowley was exposed to damaging, loud impulse, high-pitched sounds.

65.   Plaintiff Crowley did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

66.   Plaintiff Crowley suffers from hearing loss and tinnitus.

**Richard Davis**

67.   Plaintiff Davis worked as a welder and mechanic for Electro Inc. from approximately 2001 to 2007. His responsibilities included cutting steel with industrial saws for extended periods of time.

68.   Plaintiff Davis wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Davis was exposed to damaging, loud impulse, high-pitched sounds.

69.   Plaintiff Davis did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

70.   Plaintiff Davis suffers from hearing loss.

**Mark Eller**

71.   Plaintiff Eller worked as a maintenance mechanic for Sherwin Alumina Company, LLC from approximately 1998 to 2011. His responsibilities included working with heavy machinery and equipment for extended periods of time.

72.    Plaintiff Eller wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Eller was exposed to damaging, loud impulse, high-pitched sounds.

73.    Plaintiff Eller did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

74.    Plaintiff Eller suffers from hearing loss and tinnitus.

*William Fields*

75.    Plaintiff Fields worked as an independent contractor welder from approximately 1999 to 2016. His responsibilities included working with heavy machinery and equipment for extended periods of time.

76.    Plaintiff Fields wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Fields was exposed to damaging, loud impulse, high-pitched sounds.

77.    Plaintiff Fields did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

78.    Plaintiff Fields suffers from hearing loss and tinnitus.

*Carl Green*

79.    Plaintiff Green has worked in various construction jobs from approximately 1995 to the present. His responsibilities included working with impact guns, grinders, drills,

generators, and other heavy equipment and machinery.

80.   Plaintiff Green wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Green was exposed to damaging, loud impulse, high-pitched sounds.

81.   Plaintiff Green did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

82.   Plaintiff Green suffers from hearing loss.

***Christopher Griffith***

83.   Plaintiff Griffith has been exposed to loud noises for extended periods of time while playing the drums roughly every other day from approximately 2003 to the present.

84.   Plaintiff Griffith wore the 3M dual-ended earplugs during this activity. During such times, Plaintiff Griffith was exposed to damaging, loud impulse, high-pitched sounds.

85.   Plaintiff Griffith did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

86.   Plaintiff Griffith suffers from hearing loss and tinnitus.

*Jason Hauser*

87.    Plaintiff Hauser worked in various construction jobs from approximately 2002 to 2013. His responsibilities included working with power tools, industrial saws, jackhammers, and other heavy equipment and machinery.

88.    Plaintiff Hauser wore the 3M dual-ended earplugs during his employment and these activities. During such times, Plaintiff Hauser was exposed to damaging, loud impulse, high-pitched sounds.

89.    Plaintiff Hauser did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

90.    Plaintiff Hauser suffers from hearing loss and tinnitus.

*James Hayes*

91.    Plaintiff Hayes worked as a shuttle car operator for Massey Energy Co. from approximately 1994 to 2008. His responsibilities included operating industrial shuttle cars for extended periods of time.

92.    Plaintiff Hayes wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Hayes was exposed to damaging, loud impulse, high-pitched sounds.

93.   Plaintiff Hayes did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

94.   Plaintiff Hayes suffers from hearing loss and tinnitus.

*Jeffrey Hobson*

95.   Plaintiff Hobson worked as a general laborer for Selecon USA from approximately 2008 to 2010. His responsibilities included operating forklifts and other heavy equipment for extended periods of time.

96.   Plaintiff Hobson wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Hobson was exposed to damaging, loud impulse, high-pitched sounds.

97.   Plaintiff Hobson did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

98.   Plaintiff Hobson suffers from hearing loss and tinnitus.

*Daniel Hoehler*

99.   Plaintiff Hoelher worked as a material handler for Auto Truck Group from approximately 2006 to 2007. His responsibilities included working around industrial grinders, hammering, metal cutting, and other heavy equipment for extended periods of time.

13

100. Plaintiff Hoehler wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Hoehler was exposed to damaging, loud impulse, high-pitched sounds.

101. Plaintiff Hoehler did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

102. Plaintiff Hoehler suffers from hearing loss and tinnitus.

***Michael Hutchison***

103. Plaintiff Hutchison was the owner of Mike's Place Honda & Acura from approximately 2001 to 2012. His responsibilities included working with high-pressure air tools for extended periods of time.

104. Plaintiff Hutchison wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Hutchison was exposed to damaging, loud impulse, high-pitched sounds.

105. Plaintiff Hutchison did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

106. Plaintiff Hutchison suffers from hearing loss and tinnitus.

14

*William Ingram*

107.  Plaintiff Ingram worked as an electrician for Florida Power & Light Co. from approximately 1974 to 2014. His responsibilities included working with industrial generators and other heavy machinery for extended periods of time.

108.  Plaintiff Ingram wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Ingram was exposed to damaging, loud impulse, high-pitched sounds.

109.  Plaintiff Ingram did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

110.  Plaintiff Ingram suffers from hearing loss and tinnitus.

*William Martin*

111.  Plaintiff Martin worked as a heavy equipment operator for Appalachian Fuels LLC from approximately 2003 to 2006; for Miller Brothers Coal LLC from approximately 2007 to 2009; for Frasure Creek Mining LLC from approximately 2009 to 2010; and for Kentucky Fuel Corporation from approximately 2010 to 2018. His responsibilities included operating heavy equipment in an industrial environment for extended periods of time.

112.  Plaintiff Martin wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Martin was exposed to damaging, loud impulse, high-

pitched sounds.

113.  Plaintiff Martin did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

114.  Plaintiff Martin suffers from hearing loss and tinnitus.

*Scott McWhorter*

115.  Plaintiff McWhorter worked in various construction jobs from approximately 2003 to 2006. His responsibilities included working around cranes, refinery units, and other heavy equipment for extended periods of time.

116.  Plaintiff McWhorter wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff McWhorter was exposed to damaging, loud impulse, high-pitched sounds.

117.  Plaintiff McWhorter did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

118.  Plaintiff McWhorter suffers from hearing loss and tinnitus.

*Michael Naron*

119.  Plaintiff Naron worked as a roll tender for Graphic Packaging International from approximately 2010 to 2012 and as a machine operator for Mid South Extrusion, Inc. from

approximately 2012 to 2015. His responsibilities included working with heavy machinery and equipment in an industrial environment for extended periods of time.

120. Plaintiff Naron wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Naron was exposed to damaging, loud impulse, high-pitched sounds.

121. Plaintiff Naron did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

122. Plaintiff Naron suffers from hearing loss and tinnitus.

*Robin Pace*

123. Plaintiff Pace worked as a laborer for Auria Solutions Ltd., from approximately 2007 to 2009. Her responsibilities included working in an industrial environment around heavy equipment and machinery for extended periods of time.

124. Plaintiff Pace wore the 3M dual-ended earplugs during her employment. During such times, Plaintiff Pace was exposed to damaging, loud impulse, high-pitched sounds.

125. Plaintiff Pace did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if she did not do so.

126. Plaintiff Pace suffers from hearing loss and tinnitus.

*William Pollard*

127.  Plaintiff Pollard has been exposed to loud noises for extended periods of time while shooting different caliber weapons roughly three times a month from approximately 2006 to the present.

128.  Plaintiff Pollard wore the 3M dual-ended earplugs during these activities. During such times, Plaintiff Pollard was exposed to damaging, loud impulse, high-pitched sounds.

129.  Plaintiff Pollard did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

130.  Plaintiff Pollard suffers from hearing loss and tinnitus.

*Kerry Putthoff*

131.  Plaintiff Putthoff worked as a heavy equipment operator for LRM Industries, Inc. from approximately 2000 to 2010. His responsibilities included operating a 62-pound caterpillar scraper for extended periods of time.

132.  Plaintiff Putthoff wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Putthoff was exposed to damaging, loud impulse, high-pitched sounds.

133.  Plaintiff Putthoff did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

134.  Plaintiff Putthoff suffers from hearing loss and tinnitus.

*Rebecca Reyna*

135.  Plaintiff Reyna worked as a laborer for Hager Flecks from approximately 2013 to 2015. Her responsibilities included working with industrial cutting machines for extended periods of time.

136.  Plaintiff Reyna wore the 3M dual-ended earplugs during her employment. During such times, Plaintiff Reyna was exposed to damaging, loud impulse, high-pitched sounds.

137.  Plaintiff Reyna did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if she did not do so.

138.  Plaintiff Reyna suffers from hearing loss and tinnitus.

*Marquette Richardson*

139. Plaintiff Richardson worked as a forklift operator for Decoma Msig from approximately 2005 to 2008. His responsibilities included operating a forklift in an industrial environment for extended periods of time.

140.  Plaintiff Richardson wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Richardson was exposed to damaging, loud impulse, high-pitched sounds.

141.  Plaintiff Richardson did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

142.  Plaintiff Richardson suffers from hearing loss.

*Morris Rowe*

143.  Plaintiff Rowe worked in various construction jobs from approximately 1989 to 2010. His responsibilities included working with heavy machinery and equipment on an active construction site for extended periods of time.

144.  Plaintiff Rowe wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Rowe was exposed to damaging, loud impulse, high-pitched sounds.

145.  Plaintiff Rowe did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

146.  Plaintiff Rowe suffers from hearing loss and tinnitus.

20

*Derrick Sheard*

147.  Plaintiff Sheard worked as a contract electrician for various companies from approximately 2003 to 2015. His responsibilities included working with heavy equipment and power tools in an industrial environment for extended periods of time.

148.  Plaintiff Sheard wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Sheard was exposed to damaging, loud impulse, high-pitched sounds.

149.  Plaintiff Sheard did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

150.  Plaintiff Sheard suffers from hearing loss and tinnitus.

*Craig Snyder*

151.  Plaintiff Snyder worked as an iron worker for Local Union 416 and 378 from approximately 1982 to 2018. His responsibilities included operating heavy equipment and machinery in an industrial environment for extended periods of time.

152.  Plaintiff Snyder wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Snyder was exposed to damaging, loud impulse, high-pitched sounds.

153.  Plaintiff Snyder did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

154.  Plaintiff Snyder suffers from hearing loss and tinnitus.

**Cassandra Williams**

155.  Plaintiff Williams worked as a laborer for Sanderson Farms from approximately 2013 to 2015. Her responsibilities included working around forklifts, industrial engines, and other heavy equipment for extended periods of time.

156.  Plaintiff Williams wore the 3M dual-ended earplugs during her employment. During such times, Plaintiff Williams was exposed to damaging, loud impulse, high-pitched sounds.

157.  Plaintiff Williams did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if she did not do so.

158.  Plaintiff Williams suffers from hearing loss and tinnitus.

**Andrew Wood**

159.  Plaintiff Wood worked as a sheet metal fabricator for GSI Group LLC from approximately 2000 to 2014. His responsibilities included operating an industrial punch press, brake press, and other heavy equipment and machinery for extended periods of time.

160. Plaintiff Wood wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Wood was exposed to damaging, loud impulse, high-pitched sounds.

161. Plaintiff Wood did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

162. Plaintiff Wood suffers from hearing loss.

*Edward Young*

163. Plaintiff Young worked as a laborer for AlphaGraphics from approximately 2008 to 2012 and as a CNC operator for ARC Document Solutions from approximately 2012 to 2017. His responsibilities included operating industrial machinery and equipment for extended periods of time.

164. Plaintiff Young wore the 3M dual-ended earplugs during his employment. During such times, Plaintiff Young was exposed to damaging, loud impulse, high-pitched sounds.

165. Plaintiff Young did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

166. Plaintiff Young suffers from hearing loss and tinnitus.

**Defendants' Manufacture and Testing of the Combat Arms™ Earplugs**

167.  Aearo Technologies was the global market leader in hearing and eye protection and was based in Indianapolis, Indiana. Aearo Technologies developed, marketed, and sold the Combat Arms™ earplug until being acquired by 3M in 2008 for $1.2 billion. Afterwards, 3M hired Aearo's employees and maintains it as a separate operating unit. Post-acquisition, the Combat Arms™ earplugs have been marketed and sold under the 3M brand. Because 3M acquired both the assets and liabilities of Aearo, Aearo and 3M are used interchangeably and all allegations against Aearo are directed as a matter of law against 3M.

168.  Aearo developed dual-ended, non-linear (selective attenuation) Combat Arms™ earplugs for the specific purpose of providing a single set of earplugs that provide two options for hearing attenuation depending on how they are worn:



169.  The earplugs can be worn in an open or "unblocked" position (yellow end in) to block, or at least significantly reduce, loud impulse sounds, while still allowing the user to hear quieter noises. Alternatively, the earplugs can be worn in a closed or "blocked" position (green end in) to block, or at least significantly reduce, all sounds, i.e., operate as ordinary earplugs.

170.  Defendants knew these earplugs, at a minimum, required special instructions for use as early as 2000.

171.  At all relevant times, the Combat Arms™ earplugs had a tendency to imperceptibly loosen in the wearer's ear, thus allowing damaging sounds to enter the ear canal around the outside of the earplug. Specifically, the basal edge of the third flange of the non-inserted end of the earplug is prone to press against some wearers' ear canals and fold back to its original shape, thereby loosening the seal in their ear canals. Because the earplug is symmetrical, this occurs regardless of which end is inserted into the ear.

172.  Aearo learned of this problem when it completed testing of the Combat Arms™ earplugs. In fact, in February 2000, after the Combat Arms™ earplugs failed specification testing, Aearo employees rolled back the non-inserted yellow flanges to mitigate the loosening effect.

173.  The value and effectiveness of earplugs has been standardized under federal law through a Noise Reduction Rating ("NRR"). The testing and labeling of earplugs such as the Combat Arms™ earplugs to achieve an NRR is governed by federal regulations

promulgated by the Environmental Protection Agency ("EPA") pursuant to the Noise

Control Act, 42 U.S.C. § 4901 *et seq*. Specifically, 40 C.F.R. § 211.206-1 provides:

> The value of sound attenuation to be used in the calculation of the Noise Reduction Rating must be determined according to the "Method for the Measurement of Real-Ear Protection of Hearing Protectors and Physical Attenuation of Earmuffs." This standard is approved as the American National Standards Institute Standard (ANSI-STD) S3.19-1974.

174. Further, 40 C.F.R. §211.204-4(e) requires that specific supporting information

accompany hearing protection devices sold in the United States:

> The following minimum supporting information must accompany the device in a manner that insures its availability to the prospective user. In the case of bulk packaging and dispensing, such supporting information must be affixed to the bulk container or dispenser in the same manner as the label, and in a readily visible location.… **Instructions as to the proper insertion or placement of the device.**

(Emphasis added).

**Aearo's Test Results for the Combat Arms™ Earplugs Demonstrated the Need for a Warning and Special Fitting Instructions**

175. The NRR is supposed to represent the amount of sound attenuation experienced

by a test group under conditions specified by the federal Noise Control Act's testing

methodology.

176. In or around January 2000, Aearo began NRR testing on each end of the Combat

Arms™ earplug. Rather than use an independent test lab, Aearo performed its testing in-

house at its E-A-RCAL laboratory (also now owned by 3M). Aearo selected 10 test

subjects, including some of its own employees. Aearo's test protocol involved testing:

26

(1) the subject's hearing without an earplug; (2) the subject's hearing with the open/ unblocked (yellow) end of the Combat Arms™ earplug inserted; and (3) the subject's hearing with the closed/blocked (green) end of the Combat Arms™ earplug inserted.

177. Aearo's own employees monitored the test results as the tests were performed, which allowed them to stop the testing at any point if they were not achieving the desired NRR. This violated the ANSI S3.19-1974 testing protocol. In fact, Aearo stopped the test of the green end of the Combat Arms™ earplug inserted after only 8 of the 10 subjects had been tested. At that point, the Combat Arms™ earplugs were failing expectations miserably. Aearo was expecting to achieve an NRR of 22 with the green end inserted, but in fact was on target to receive a 10.9 rating based on the experiences of the first eight subjects.

178. Despite stopping the test on the green end of the Combat Arms™ earplugs, Aearo had the remaining two test subjects complete the test with respect to the yellow end of the Combat Arms™ earplugs only because Aearo liked the low NRR rating the test was indicating to that point. After completion, however, testing of the yellow end resulted in an NRR of -2, which falsely suggested that the earplugs actually amplified sound. Aearo thus knew that the test was inaccurate and needed to be repeated. Instead, Aearo changed the -2 NRR to a 0 NRR, and used that rating on its labels.

179. After prematurely stopping the NRR test of the green end of the Combat Arms™ earplug, Aearo investigated the disappointing test results and discovered that because

the stem of the earplug was so short, it was difficult to insert the earplug deep enough into the wearer's ear canal to obtain a proper fit as required by ANSI S3.19-1974, Section 3.2.3. *See*, Acoustical Society of America Standard Method for the Measurement of Real-Ear Protection of Hearing Protectors and Physical Attenuation of Earmuffs (ASA STD 1-1975).

180.   Aearo also discovered that when the green end of the Combat Arms™ earplug was inserted into the ear using the standard fitting instructions, the basal edge of the third flange of the yellow end pressed against the wearer's ear and folded backward. When the inward pressure of the earplug was released, the yellow flanges tended to return to their original shape, thereby loosening the earplug, often imperceptibly to the wearer. And, because the Combat Arms™ earplug was symmetrical, this same problem occurred when the earplug was reversed.

181.   Aearo later instructed test subjects to fold the flanges on the non-inserted end of the earplug back before inserting it into the ear.

182.   Using these manipulated fitting instructions, Aearo re-tested the green end of the Combat Arms™ earplugs starting in February 2000. During this re-test of the green end, test subjects folded back the yellow flanges of the earplug (essentially elongating the too-short stem) to allow them to insert the earplugs deeper into their ears to obtain a proper fit. Because the yellow flanges were folded back, the basal edge of the third flange no longer pressed against the subject's ear canal, and thus did not cause the earplug to

loosen during the testing. Using this manipulated test protocol, Aearo achieved a 22 NRR on the green end of the Combat Arms™ earplug.

183. Due to the symmetrical nature of the Combat Arms™ earplugs, the problem that affected the fit of the green end similarly affected the fit of the yellow end. The fact that Aearo's testing of the yellow end resulted in a -2 NRR meant that the earplugs (when used without the special instructions described above) did not provide a proper fit (as required by ANSI S3.19-1974, Section 3.2.3) between the ear canal of at least some of the subjects and the earplugs. As a result, some subjects had large standard deviations across trials on the yellow end test, which suppressed the NRR rating.

184. Nevertheless, Aearo did not re-test the yellow end using the manipulated fitting instructions like it did on the green end, i.e., folding back the flanges on the green end of the earplug before inserting the yellow end into the ear.

185. Aearo did not re-test the yellow end because it knew that it would not be able to obtain a 0 NRR (much less the facially invalid -2 NRR).

186. Moreover, the need for the special fitting instructions for the Combat Arms™ earplugs is more important during real-life use than in a lab where the NRR tests are performed over the span of just a few minutes and the head of the test subject remains virtually motionless during the test. Wearers, such as Plaintiffs on the other hand, may wear the earplug for an extended period of time and are more active than test subjects in a lab.

187. Because the issue was imperceptible to the wearer, an improper fit would go undetected by those who wore them.

188. Defendants continued to sell the Combat Arms™ earplugs until 2016, at which time Defendants discontinued the earplug. *See* Discontinuation: 3M Combat Arms Earplugs Version 2 (Nov. 17, 2015)).

189. Defendants' failure to warn about the need for special fitting instructions for the Combat Arms™ earplugs caused Plaintiffs to suffer hearing loss and tinnitus.

190. At all times after 3M's acquisition of Aearo, 3M knew of, conspired with, and was complicit in Aearo's wrongful acts in marketing and selling the Combat Arms™ earplugs without warning of the need for modified fitting instructions.

### TOLLING OF STATUTES OF LIMITATIONS

191. Plaintiffs could not, by the exercise of reasonable diligence, have discovered Defendants' wrongful acts as the cause of his injuries at an earlier time, because, at the time of these injuries, the cause was unknown to Plaintiffs. Plaintiffs did not suspect, nor did Plaintiffs have reason to suspect, the cause of these injuries, or the tortious nature of the conduct causing these injuries, until less than the applicable limitations period prior to the filing of this action.

192. Further, the running of the statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Through their affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiffs the risks associated with use of

the Combat Arms™ earplugs without adhering to the specific fitting instructions discussed above.

193.   Because of Defendants' failure to warn, Plaintiffs were unaware, and could not reasonably know or have learned through reasonable diligence that they had been exposed to the risks alleged herein, and that those risks were the direct and proximate result of Defendants' acts and omissions.

194.   Through Defendants' affirmative misrepresentations and omissions pertaining to the safety and efficacy of the Combat Arms™ earplugs, Plaintiffs were prevented from discovering this information sooner because Defendants misrepresented and continued to misrepresent the risks associated with using the Combat Arms™ earplugs without adhering to the specific fitting instructions discussed above.

### COUNT I: PRODUCT LIABILITY – FAILURE TO WARN

195.   Plaintiffs incorporate by reference the paragraphs above as if fully set forth herein.

196.   Defendants are the manufacturers and sellers of the Combat Arms™ earplugs.

197.   The Combat Arms™ earplugs that Defendants manufactured, distributed, and sold lacked adequate warnings, instructions, or labels at the time they left Defendants' control.

198.   Defendants failed to warn, failed to provide instructions, and failed to provide an adequate label that included the modified fitting instructions necessary for the Combat

31

Arms™ earplug to fit correctly in the wearer's ear and create the seal necessary to block out damaging sounds.

199. Defendants had a duty to sell the Combat Arms™ earplugs with reasonable and due care for the safety and well-being of wearers, including Plaintiffs. Defendants breached that duty.

200. Defendants had a duty to provide adequate warnings and/or instructions to prevent the risks associated with the Combat Arms™ earplugs when worn in the ordinary course. Defendants breached that duty.

201. It was foreseeable to Defendants that the Combat Arms™ earplugs would be unreasonably dangerous if distributed without a warning regarding the risks of damage to the ear with an improper fit and/or modified fitting instructions.

202. Not only was it foreseeable, it was foreseen by Defendants. During testing, Defendants discovered that because the stem of the earplug was so short, it was difficult to insert the earplug deep enough into the wearer's ear canal to obtain a proper fit.

203. Defendants also discovered that when the green end of the Combat Arms™ earplug was inserted into the ear using the standard fitting instructions, the basal edge of the third flange of the yellow end pressed against the wearer's ear and folded backward. When the inward pressure of the earplug was released, the yellow flanges tended to return to their original shape, thereby loosening the earplug, often imperceptibly to the wearer. And, because the Combat Arms™ earplug was symmetrical,

32

this same problem occurred when the earplug was reversed.

204. Defendants had a post-sale duty to warn of the above alleged product-related risks because Defendants knew or reasonably should have known that the Combat Arms™ earplug posed a substantial risk of harm to wearers, including Plaintiffs, if used without adhering to specific fitting instructions; the wearer who used the Combat Arms™ earplug can reasonably be assumed to be unaware of the risk of harm of using the Combat Arms™ earplugs without specific fitting instructions because the above alleged loosening effect was imperceptible; a warning or instruction showing how to correctly and safely use the Combat Arms™ earplug could have been effectively communicated to and acted upon by the wearer to whom a warning or instruction might be provided; and the risk of harm, including but not limited to hearing loss in wearers, is sufficiently great to justify the slight burden of providing a warning or instruction. Defendants breached this duty by failing to provide a post-sale warning or instruction.

205. The Combat Arms™ earplugs contained no warnings, or in the alternative, inadequate warnings and/or instructions, as to the risk that the Combat Arms™ earplugs would allow damaging sounds to bypass the earplug thereby posing a serious risk to Plaintiffs' hearing unbeknownst to Plaintiffs.

206. The warnings and instructions that accompanied the Combat Arms™ earplugs failed to provide the level of information that an ordinary wearer would expect when using the Combat Arms™ earplugs in a manner reasonably foreseeable to Defendants.

207. Had Plaintiffs received a proper or adequate warning as to the risks associated with the use of the Combat Arms™ earplugs in the manner contemplated by Defendants, they would not have used them.

208. Additionally, and/or alternatively, had Plaintiffs received the modified fitting instructions that were used by Defendants during the testing, which were not disclosed to Plaintiffs, Plaintiffs would have followed the modified fitting instructions to ensure a proper seal to prevent damaging sounds from entering the ear canal.

209. Plaintiffs suffered injury and damage as a direct and proximate result of Defendants' failures to warn and/or provide adequate instructions regarding the dangerous condition of the Combat Arms™ earplugs that the Defendants manufactured, distributed, and sold.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request from Defendants, jointly and severally, compensatory damages, together with appropriate equitable relief, costs and attorneys' fees as follows:

A. Award of monetary damages, including compensatory relief, to which Plaintiffs are entitled at the time of trial in an amount exceeding $50,000;

B. Award of pre- and post-judgment interest;

C. Award of costs; and

D. Award of all such other and further relief as may be available at law or

equity and may be proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

## ACKNOWLEDGMENT

The undersigned acknowledge sanctions may be imposed under Minn. Stat. § 549.211.

Dated:  December 7, 2020

Respectfully submitted,

By  /s/ Alicia N. Sieben
William R. Sieben (#100808)
Alicia N. Sieben (#389640)
Matthew J. Barber (#397240)
**SCHWEBEL GOETZ & SIEBEN, P.A.**
5120 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-2246
Telephone:  612-377-7777
bsieben@schwebel.com
asieben@schwebel.com
mbarber@schwebel.com

Daniel Gustafson (# 202241
Amanda M. Williams (# 341691)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
awilliams@gustafsongluek.com

Richard M. Paul III *(pro hac forthcoming)*
Ashlea G. Schwarz *(pro hac forthcoming)*
**PAUL LLP**
601 Walnut, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Rick@PaulLLP.com
Ashlea@PaulLLP.com

**ATTORNEYS FOR PLAINTIFFS**